```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BAKERY and CONFECTIONARY UNION
and INDUSTRIAL PENSION FUND and
BOARD OF TRUSTEES of the BAKERY
and CONFECTIONARY UNION and
INDUSTRIAL PENSION FUND,
                         Plaintiff(s),           REPORT AND
                                                 RECOMMENDATION
          -against-                              CV09-3068 (ADS) (WDW)

MT. ROSE RAVIOLI & MACARONI CO, INC.,

                         Defendant(s).
----------------------------------------------------------X
```
**WILLIAM D. WALL, United States Magistrate Judge:**

       Before the court on referral from District Judge Spatt is the determination of damages to be awarded on the grant of default judgment. I recommend that the plaintiffs be awarded $71,009.97 in withdrawal liability pursuant to 29 U.S.C. §1132(g)(2)(A) and 29 U.S.C. § 1381 *et seq.*; $8,654.34 in interest through October 1, 2011 pursuant to 29 U.S.C. §1132(g)(2)(B); $7,100.99 in liquidated damages pursuant to 29 U.S.C. §1132(g)(2)(C); and $6,415.50 in legal fees and $350 in costs pursuant to 29 U.S.C. §1132(g)(2)(D), for a total award of $93,530.80.

## BACKGROUND

       The plaintiffs brought this action pursuant to ERISA, 29 U.S.C. §§ 1001 et seq. to recover withdrawal liability and attendant damages from the defendant, Mt. Rose Ravioli & Macaroni Co., Inc. ("Mt. Rose"). The plaintiffs report that plaintiff Bakery and Confectionary Union and Industry International Pension Fund ("International Pension Fund") is a trust fund and an employee benefit plan, maintained for the purpose of providing retirement and related benefits to eligible participants. *See* DE[8-2], McConnell Aff. It is also a multiemployer pension plan under ERISA. The International Pension Fund is the successor in interest to the Bakery,

Confectionery, Tobacco Workers & Grain Millers Local 102 Pension Fund ("Local 102 Pension Fund"). The plaintiff Trustees are fiduciaries under ERISA.

Defendant Mt. Rose, an employer under ERISA, was a participating employer in the Local 102 Pension Fund until February 2004, and was obligated to make contributions pursuant to a collective bargaining agreement ("CBA"). The plaintiffs allege that in or around February 2004, Mt. Rose withdrew from participation in the Local 102 Pension Fund and as a result of that withdrawal is obligated to pay withdrawal liability, as required by 29 U.S.C. § 1381(a).

The Local 102 Pension Fund calculated Mt. Rose's withdrawal liability under the statutory guidelines to be $71,009.97, notified Mt. Rose of the determination, and demanded payment, by letter dated December 11, 2007. *See* Brock Aff., DE[13], Ex. B. The letter set forth a schedule of payments, with the first payment of $2,983.33 to be paid on January 1, 2008. No payments have been made and no arbitration proceeding has been initiated pursuant to 29 U.S.C. §1401(a). By letter dated June 12, 2008, the International Pension Fund notified Mt. Rose that it was in default.

Default in this action was noted by the Clerk of the Court on May 26, 2010. The plaintiffs moved for default judgment on July 5, 2011. Judge Spatt entered a default judgment on September 21, 2011 and referred the calculation of damages to me on that date. DE[10]. The plaintiffs were given an opportunity to submit additional papers in support of their claimed damages and they did so on October 17, 2011. The defendant has not submitted any papers, despite having been served with my order giving them an opportunity to do so. The plaintiffs seek payment of the withdrawal amount of $71,009.97, liquidated damages in the amount of $7,100.99, interest in the amount of $8,654.34 as of October 1, 2011, attorney's fees of $6415.50

and costs in the amount of $350.00.

## DISCUSSION

**Default Damages:**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.), *cert. denied,* 506 U.S. 1080 (1993). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Abramov,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997). The movant must prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted). Detailed affidavits and other documentary evidence can provide this basis. *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991). Here, the plaintiffs have submitted affidavits from counsel Patricia McConnell and from Steven D. Brock, the Manager of Administrative Services of the International Pension Fund, along with documentary support for the amounts sought. The defendant Mt. Rose has submitted no papers.

**ERISA Withdrawal Liability:**

Withdrawal liability is statutory, arising when an employer stops contributing to a multiemployer pension plan designed to "relieve the funding burden on remaining employers" by having the withdrawing employer pay its proportionate share of the plan's unvested benefits.

3

*ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d 879, 881 (2d Cir. 1988). The determination of whether an employer has withdrawn and the collection of withdrawal liability payments are governed by a statutory framework set forth in ERISA. Pursuant to that framework, an employer withdraws from a plan when it permanently ceases to have operations covered by a CBA or permanently ceases to have an obligation to contribute to the plan. *See* 29 U.S.C. §1383(a). Disputes over withdrawal liability determinations are generally to be resolved by arbitration, but when no arbitration proceeding is initiated, as here, the plan sponsor may bring an action in state or federal court to collect the amounts due and owing. *See Levy Bros.,* 846 F.2d at 881.

The Trustees allege that Mt. Rose permanently ceased to have operations covered by the CBA and permanently ceased to have an obligation to contribute to the plan in February 2004, thereby withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C.§1383(a). Complaint, ¶11. Mt. Rose has not opposed the motion for default judgment, and the Complaint sufficiently pleads the withdrawal. As a result of Mt. Rose's withdrawal, it became liable to the Pension Fund for withdrawal liability.

"When an employer withdraws from a multiemployer plan, the plan sponsor, that is, the entity maintaining the plan, must determine the amount of the employer's withdrawal liability, notify the employer of the amount and make a demand for payment." *Levy Bros*., 846 F.2d at 881. Here, the Local 102 Fund's actuary determined the amount of Mt. Rose's withdrawal liability to be $71,009.97. Brock Aff., ¶7. The Fund notified Mt. Rose of this liability by letter dated December 11, 2007 and provided a schedule for withdrawal liability payments. Brock Aff., Ex. B. Pursuant to section 4219(c) of ERISA, 29 U.S.C.§1399(c), and, as provided in the

4

notice and demand letter, Mt. Rose was required to make quarterly withdrawal liability payments of $2,983.33, with the first payment due on January 1, 2008.

When Mt. Rose failed to make any payments, the Trustees sent a notice of default by letter dated June 12, 2008. Brock Aff., Ex. C. Mt. Rose did not demand or initiate arbitration, a lapse that constitutes a waiver of its right to contest withdrawal liability assessment. *See Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 265 (2d Cir. 1990). Where a defendant does not initiate arbitration, it "waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability. Accordingly, the withdrawal liability assessed against" the defendant becomes fixed. *Vacca v. Bridge Chrysler Jeep Dodge, Inc.,* 2008 WL 4426875, *7 (E.D.N.Y. Sept. 4, 2008). The amount of withdrawal liability also becomes fixed and must be paid. *See Amalgamated Lithographers of America v. Unz & Co., Inc.,* 2009 WL 4016482, *6 (S.D.N.Y. Nov. 3, 2009) (citing 29 U.S.C. §1401(a)(1), (b)(1)).

Based on the evidence submitted in support of the motion and the applicable law, I recommend a finding that the Trustees are entitled to an award of the amount of withdrawal liability sought - $71,009.97. ERISA provides, in 29 U.S.C. §1451(b), that in any action to compel payment of withdrawal liability, "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution" under 29 U.S.C. §1145. Thus, in addition to the amount of withdrawal liability due and owing, the Fund is entitled to damages under 29 U.S.C. §1132(g)(2), consisting of interest, liquidated damages, costs and attorneys' fees. *See Transportacion Maritima,* 901 F.2d at 265; *UNITE National Retirement Fund v. Veranda Mktg. Co.,* 2009 WL 2025163, *4 (S.D.N.Y. July 13, 2009). Courts have found the award of such damages to be mandatory. *UNITE,* 2009 WL

5

2025163 at *4; *see also Benson v. Brower's Moving & Storage, Inc.,* 726 F. Supp. 31, 36 (E.D.N.Y. 1989).

Interest: 29 U.S.C. §1132(g)(2) allows an award of interest at the rate provided by the relevant plan, as does the regulation applicable to withdrawal liability. *See Board of Trustees of UFCW Local 174 Pension Fund v. Jerry WWHS Co., Inc.,* 2009 WL 982424, *5 (E.D.N.Y. Apr. 10, 2009)(citing 29 C.F.R. §4219.32(b)). In the event of a default on payment of withdrawal liability, a plan sponsor may require not only immediate payment of the outstanding amount, but also accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. *See Daniello v. PML Furniture Group of NJ, Ltd.,* 2009 WL 4722650, * 5 (E.D.N.Y. Dec. 9, 2009)(citing 29 U.S.C. §1399(c)(5)). Here, the Pension Fund Trustees have adopted a policy that the interest shall be calculated at the rate set by the Pension Benefit Guaranty Corporation on overdue or defaulted withdrawal liability and they calculated the interest through October 1, 2011 at a rate of 3.25%, amounting to $8,654.34. *See* Brock Aff., ¶¶ 13 & 14, Exs. D & E.

Liquidated Damages: 29 U.S.C.§1132(g)(2) also allows for liquidated damages in an amount equal to the greater of interest on the unpaid contributions or twenty percent of unpaid contributions. Here, the Pension Fund Trustees have adopted a policy that the amount of liquidated damages on delinquent contributions and overdue withdrawal liability is 10% of the amount due, in this case $7,100.99. Brock Aff., ¶ 13. I recommend that interest be awarded in that amount. *See Trustees of the Local 807 Labor Management Health Fund v. Express Haulage Co.,* 2008 WL 4693533, *8 (E.D.N.Y. Oct. 23, 2008).

Attorney's Fees: 29 U.S.C. §1132(g)(2)(D) requires an award of reasonable attorney's

fees and costs upon a determination that an employee benefit plan is entitled to judgment. In the Second Circuit, attorney's fees are determined according to the "presumptively reasonable fee" approach, which is calculated by multiplying a reasonable hourly rate by a reasonable number of expended hours. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186-90 (2d Cir. 2008). The Court has "considerable discretion" in determining the presumptively reasonable fee; however, it should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190. Ultimately, the district court should be guided by what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively would be willing to pay." *Id.* at 184.

The fee applicant bears the burden of establishing the reasonableness of the hourly rate and the number of hours expended. *See New York State Teamsters Conference & Ret. Fund v. Erick Sanitation*, 1992 WL 246880, at *4 (N.D.N.Y. Sept.18, 1992). However, the district court may also rely upon its own knowledge of "the prevailing market rates in the relevant community for similar services for lawyers of reasonable comparable skill, experience and reputation." *Chambless v. Masters, Mates, and Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (internal citation and quotation marks omitted). Under the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal citations and quotation marks omitted). However, a litigant may be awarded higher out-of-district rates if she can prove that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better

net result. *Id.* at 175. In determining the reasonableness of the hours expended, the Court must assess the value of the work product of the particular expenditures to the client's case. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). "If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation." *Id.*

Plaintiffs request $6,415.50 in attorney's fees, which represents partner time billed at a rate of $330 per hour, and counsel and associate time billed at rates of $275 and $225 per hour. DE[12], McConnell Aff. in Supp. of Atty Fees, ¶ 5. They support their request with contemporaneous time records detailing the tasks the attorneys completed for this case and the number of hours expended on each task. *See id.*, Ex. A. Based on my review of similar cases in this district involving defaulting defendants liable for unpaid contributions to benefit funds, I find these rates to be within the reasonable range. *See, e.g.,Gesualdi v. MBM Industries,* 2010 WL 3724348, *2 (E.D.N.Y. Sept. 15, 2010) (awarding rates of $390 for partners and $280 for an associate)(citations omitted); *Finkel v. Architcraft, Inc.,* 2010 WL 1257773, *4 (E.D.N.Y. Feb. 24, 2010)(awarding rates of $370 for partners and $275 for associates)(citations omitted); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, 2007 WL 4324019, *6 (E.D.N.Y. Dec. 7, 2007) (finding that prevailing rates in 2007 for ERISA work in this district ranged from $200-$375 per hour for partners and $200-$250 per hour for senior associates) (citations omitted).

I have also reviewed the time records submitted by plaintiffs and find that the time expended is reasonable for this case. Therefore, I recommend that the Court enter judgment against the defendant in the amount of $6,415.50 in attorney's fees.

Costs: The Trustees also seek $350 in costs, consisting of the court filing fee, and I recommend an award of that amount.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Plaintiff's counsel is directed to serve a copy of this Report on the defendant and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
November 10, 2011

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge